OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas wherein, appellant, Jason W. Freshwater, was convicted of trafficking in heroin, a felony in the fourth degree.
 {¶ 2} On August 1, 2001, Jonathan Smeker ("Smeker") was arrested by officers from the Eastlake Police Department for possession of heroin. The officers stopped Smeker's vehicle. Smeker told the officers he was scheduled to go into a drug treatment program that day and he needed help for his addiction. He told the officers that he had drugs in his home. He then gave the police consent to search his home. He led the officers to his home where he lived with his mother. A search of his bedroom revealed a baggie containing heroin residue. Detective Bowersock of the Eastlake Police Department was on the scene and informed Smeker that if he cooperated with a controlled drug buy, he would recommend his charge be reduced to a misdemeanor attempted possession. Smeker agreed to act as a confidential informant.
 {¶ 3} Smeker originally agreed to arrange a drug buy with an individual from whom he had purchased heroin in the past. However, Smeker was unable to reach that individual and, instead, opted to contact appellant. According to the arranged plan, Smeker was to arrange a meeting with appellant in order to buy four bags of heroin. Prior to initiating contact, the officers set up a recording device, which would enable telephone calls between Smeker and appellant to be monitored and recorded.
 {¶ 4} Three telephone conversations ultimately occurred between Smeker and appellant. Smeker telephoned appellant twice, and appellant returned a call to Smeker. During the conversations, there was no specific mention of drugs. However, Smeker asked appellant if he "had something" for him and if he had "anything going on," to which appellant responded in the affirmative. The two also discussed a previous debt of approximately $60 that Smeker owed appellant.
 {¶ 5} Smeker finally convinced appellant to meet him. However, Smeker's mother did not want the buy to occur at her home. There is some dispute as to whether Smeker or Detective Bowersock suggested that the buy occur at a middle school, a short distance from Smeker's home. Nonetheless, the buy was arranged to take place at the school.
 {¶ 6} After the meeting was set up, the police took Smeker to the Eastlake Police Station to be searched and wired for the buy. Detective Bowersock testified that Smeker was searched in the garage of the Eastlake Police Station, to prevent any other suspects who might be on the premises from seeing him. The police did a thorough search of Smeker's person, from which only $60, given to Smeker from his mother for the buy, was found. No drugs or drug paraphernalia were found. After the search, Detective Bowersock placed the wire on Smeker.
 {¶ 7} Appellant did not have a car, so he was picked up at his home in Painesville by his friend, Thomas Neelon. Sitting in the front passenger seat was Regina Hosack, Neelon's girlfriend. Another friend, Josh Franey, sat in the back of the car. When the three arrived at appellant's house, Hosack got out to get appellant. Once appellant was in the car, they traveled to the school to meet Smeker. Once they arrived, Smeker got in the car. Hosack testified at trial that appellant and Smeker went back and forth about the "bag" and money. Smeker paid the prior debt to appellant and asked him about a new transaction and what it would cost. Appellant told him he would need $20 and then gave Smeker a bag of heroin.
 {¶ 8} The Eastlake Police stopped the car a short while later. Everyone was ordered out of the vehicle and searched. A search of Smeker revealed a packet of heroin. After searching appellant, the officers recovered a cellular phone and $149. Police also recovered heroin, a clean needle, and a dirty needle from Hosack. In his written statement to the police, appellant stated that he met with Smeker, Smeker paid him for a prior marijuana buy, and he gave Smeker a bag of heroin.
 {¶ 9} On September 19, 2001, appellant was indicted on one count of trafficking in heroin, a felony in the fourth degree, with an accompanying specification that the offense was committed in the vicinity of a school. Appellant waived his right to be present at his arraignment, and the trial court entered a plea of not guilty on his behalf.
 {¶ 10} On November 7, 2001, appellant filed a motion for public payment of expert audiotape analysis and motion to produce the original audiotapes and the original recording devices, averring that "there may be serious questions as to the authenticity of the audio tapes involved." An oral hearing was held on the motions. At the conclusion of the hearing, the trial court stated that it would grant the request for public payment of an expert to analyze the audiotapes. However, in a subsequent judgment entry, dated January 30, 2002, the trial court denied appellant's motions, relying on a recent Supreme Court of Ohio case which upheld a trial court's denial of an indigent criminal defendant's request for an expert to analyze an audiotape.[1] Appellant filed a motion for reconsideration or for a further evidentiary hearing on the matter, which was denied by the trial court.
 {¶ 11} On November 16, 2001, appellant filed a motion to suppress statements. The trial court denied the motion after a hearing on the matter. Appellant also filed a motion for public payment of all transcripts prior to trial, including those of the motion for public payment for expert analysis of the audiotapes, and the motion to suppress. Appellant alleged in his motion "that some of the testimony elicited by the witnesses in several evidentiary hearings before this Court was in conflict, and, at times, contrary to what is reported in the discovery that counsel for defendant has been provided." That motion was also denied by the trial court.
 {¶ 12} A jury trial commenced on February 21, 2002. Defense counsel challenged a number of jurors for cause. The trial court granted some and overruled the others. Appellant exercised all of his peremptory challenges. Defense counsel subsequently requested a change of venue, which the trial court denied.
 {¶ 13} At trial, defense counsel objected to the playing of the audiotapes to the jury, and their admission into evidence, on the grounds of the authenticity of the tapes and the state's failure to lay a proper foundation for the tapes. Defense counsel's objections were overruled. At the close of the state's case and again at the close of all evidence, appellant made a Crim.R. 29 motion for acquittal, which were both denied by the trial court.
 {¶ 14} Appellant was subsequently found guilty of trafficking in heroin and not guilty of the specification that the offense occurred in the vicinity of a school. He was sentenced to two hundred four days in the Lake County Jail, with two hundred four days credit for time served.
 {¶ 15} Appellant subsequently filed this timely appeal, citing six assignments of error. The first assignment of error is:
 {¶ 16} "The trial court erred to the prejudice of the defendant-appellant when it failed to remove three prospective jurors for cause, thus depriving him of the right to a fair and impartial jury as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Section 1 [sic] Article 10 of the Ohio Constitution."
 {¶ 17} In his first assignment of error, appellant contends that he was denied due process when the trial court failed to remove three prospective jurors for cause. The relevant inquiry is "`"whether the composition of the jury panel as a whole
could possibly have been affected by the trial court's error."'"[2] Thus, in order for a constitutional violation to occur, the defendant must have used all of his peremptory challenges and be able to demonstrate that one of the jurors seated was not impartial. Moreover, that juror in question must have been challenged for cause. Otherwise, he is presumed to be impartial and the defendant was not forced to use a peremptory challenge.[3]
 {¶ 18} Appellant requested that the trial court remove five potential jurors for cause: Hawkins, Edmisten, Lonzer, Lanese, and Picone. The trial court excused Edmisten and Lanese for cause. The trial court overruled appellant's challenges of Hawkins, Lonzer, and Picone. Appellant then exercised all of his peremptory challenges, but only excluded Hawkins and Picone, and not Lonzer. As Lonzer was challenged for cause and yet was impaneled on the jury, because appellant had exhausted all of his peremptory challenges, appellant meets the threshold burden of establishing a potential constitutional violation.
 {¶ 19} A trial court's ruling on a challenge for cause will not be disturbed on appeal unless it is "manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion."[4] Pursuant to R.C. 2313.42, which governs challenging a prospective juror for cause, a juror may be challenged if he "discloses by his answers that he cannot be a fair and impartial juror[.]"
 {¶ 20} Appellant argues in his first issue under the first assignment of error that Juror Hawkins should have been excluded. Hawkins stated that he was currently a prosecutor for the Lake County Sheriff's Department and that his brother had recently become prosecutor for the city of Eastlake. When questioned in chambers regarding his ability to sit as a juror on the case, Hawkins stated that he was presently involved in an investigation of appellant's brother for another heroin-related offense. There is also some factual dispute as to whether he had spoken to appellant approximately one week earlier, relating to appellant's brother. When asked how this would affect his ability to sit as a juror on this case, Hawkins noted:
 {¶ 21} "[A]nd this also involved heroin, so — I would, you know, I would feel uncomfortable sitting on there. Actually, I thought I would be uncomfortable, but once you go over the instructions — this isn't a reflection on them, but Freshwater might be a problem for me. I would certainly try to be impartial no matter what."
 {¶ 22} This court cannot cite any case in support of the notion that a juror should be automatically excluded when he is employed as a prosecutor. However, other Ohio appellate districts have held that prospective jurors who are police officers should be excluded when they had some sort of direct dealing with other police officers involved in the case at issue.[5]
 {¶ 23} Turning to the instant case, Juror Hawkins has a substantial relationship to appellant's case for a number of reasons. First, in his capacity as prosecutor for the Lake County Sheriff's Department, he was currently investigating appellant's brother, and had even spoken to appellant a week earlier regarding appellant's ability to assist in another prosecution.
 {¶ 24} Secondly, Hawkins' brother was the prosecutor for the city of Eastlake, the city from which appellant's case emanates. Although Hawkins stated that his brother had only been in that position for a number of months, the relationship is one that could call into question Hawkins' ability to remain impartial.
 {¶ 25} Lastly, although the state argues that Hawkins declared he would be able to remain impartial, the transcript from voir dire speaks differently. Specifically, rather than outright stating that he could be fair and impartial, Hawkins stated, "Freshwater might be a problem for me" but that he would "try to be impartial." These are hardly the words of a juror confident in his ability to remain detached and able to render an unbiased verdict. Other districts have held that, even despite a juror's adamant declarations of impartiality, if the underlying factual circumstances appear to belie that declaration, the juror should be excluded.[6] Thus, we conclude that the trial court erred in not excusing Juror Hawkins for cause, forcing appellant to exercise a peremptory challenge in order to remove Hawkins from the jury panel.
 {¶ 26} Appellant also contends in his second issue under the first assignment of error that the trial court erred in not excusing Juror Picone for cause. Picone was questioned in chambers as her responses in front the entire jury panel indicated that she was familiar with the Freshwater family. Appellant takes issue with a number of statements made by Picone during the in-chambers questioning. Specifically, Picone stated that her son and appellant's brother went to high school together and played on the same sports teams. She stated, "I knew the parents, we intermixed a lot because the boys played sports together. I knew his dad before he passed away."
 {¶ 27} She indicated that she had no contact with the family since that time but that she knew some "history" about the family. When asked about the history she responded, "[t]hat Josh has also been brought up on drug — drug trafficking charges and some of the other boys. Because there's three boys, I think, in the family."
 {¶ 28} Picone then stated that she thought she could be fair and impartial. The state then questioned whether the fact that she knew the family so well would cause her to "overcompensate" and hold the state to a burden higher than beyond a reasonable doubt. In response, Picone stated, "[w]ell, to be perfectly honest, because I know so much of the history and the situation, I would probably be more apt to state — be on your side, be with the State's than I would be with Mr. Freshwater's case. I would be more apt to say, possibly, that he might be guilty."
 {¶ 29} The trial court then asked Picone again if she felt she could be fair and impartial to which she responded in the affirmative. Picone continued to assure the court and counsel for both parties that she could be fair and impartial and would follow the law as it was given to her by the judge. As the reviewing court, in applying the abuse of discretion standard, we cannot substitute our judgment for that of the trial court.[7] The trial court had the opportunity to observe the demeanor of the prospective juror first-hand and evaluate the sincerity of her response. Moreover, Picone was questioned repeatedly regarding her ability to remain fair and impartial and maintained that she could. Thus, we conclude the trial court did not err when it denied the challenge for cause.
 {¶ 30} In his third issue under the first assignment of error, appellant asserts that the trial court erred in failing to excuse Juror Lonzer for cause. As noted above, appellant challenged Lonzer for cause but then did not exercise a peremptory challenge to remove her from the panel. The Supreme Court of Ohio has held that, "[i]f the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenged venireman with a peremptory challenge and exhausts his peremptory challenges before the full jury is seated."[8]
 {¶ 31} In the instant case, a full jury was seated, of which Lonzer was a part. Although appellant challenged Lonzer for cause, he did not eliminate her as a juror with a peremptory challenge. However, appellant did exhaust all of his peremptory challenges and, thus, was unable to remove Lonzer.
 {¶ 32} Turning to the substance of Lonzer's voir dire colloquy, appellant avers that Lonzer's responses revealed that she had a strong anti-drug sentiment and stated that she thought the defendant should testify on his own behalf if he was not guilty. However, Lonzer did not state that she would be unable to remain fair and impartial. We conclude that the trial court did not err in failing to excuse Juror Lonzer for cause.
 {¶ 33} We conclude that the trial court did err in failing to excuse Juror Hawkins for cause. Moreover, because appellant was forced to exercise a peremptory challenge to remove Juror Hawkins from the panel and the seated jury contained a juror that appellant contends was not impartial but was unable to use a peremptory challenge as they had been exhausted, we find the trial court's error to be prejudicial.
 {¶ 34} Appellant's first assignment of error is with merit.
 {¶ 35} The second assignment of error is:
 {¶ 36} "The trial court erred to the prejudice of the defendant-appellant when it allowed the state to present inadmissible other acts evidence in contravention of Evid.R. 403(A) and 404(B) thus violating his right to a fair trial under the Constitutions of the United States and Ohio."
 {¶ 37} In his second assignment of error, appellant contends that the trial court erred when it allowed Smeker to testify regarding a prior drug deal between himself and appellant and when it failed to redact appellant's own statement regarding a prior drug transaction, included in his written statement to police officers, before it was submitted to the jury as a state's exhibit.
 {¶ 38} The admission of prior bad acts evidence is governed by both Evid.R. 404(B) and 403(A). Pursuant to Evid.R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 39} Evid.R. 404(B), codified in R.C. 2945.59, provides:
 {¶ 40} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 41} The ultimate question to be determined in deciding whether to admit such evidence is whether it is being introduced only to prove character or conforming conduct or if it is being offered to prove some other act in relation to the current proceeding. The burden is on the proponent of the other acts evidence to demonstrate its admissibility.
 {¶ 42} The admissibility of evidence under Evid.R. 404(B) is within the sound discretion of the trial court.[9] A reviewing court will not disturb the decision of the trial court absent an abuse of discretion.[10]
 {¶ 43} In the case sub judice, appellant contends that the trial court erred in admitting evidence of other acts in two instances. First, appellant asserts that the trial court abused its discretion by allowing the state to elicit testimony from Smeker relating to a prior drug transaction with appellant. Smeker testified that he had some relationship with appellant in the past and that he owed him money for a prior heroin buy. Appellant suggests that this was done solely for the purpose of prejudicing the jury against him and that the testimony presented was unrelated to the offense for which he was on trial. Defense counsel timely objected to the testimony.
 {¶ 44} Appellant also takes issue with the failure of the trial court to redact portions of appellant's written statement to the police, in which he states that Smeker owed him money for a previous marijuana buy. Defense counsel also timely objected to the statement.
 {¶ 45} Appellee contends that the testimony was "`inextricably related to the alleged criminal act'" and was background information that the jury was entitled to know in order to get the setting of the case and the circumstances surrounding the within charge.[11]
 {¶ 46} It is relevant background information that Smeker's ability to arrange a meeting with appellant was facilitated by the fact that Smeker owed appellant money from a previous deal. If it were not for that pertinent background fact, Smeker would have lacked a credible reason for which to insist upon meeting with appellant to initiate the buy. Thus, Smeker's testimony and appellant's own statement, which he sought to be redacted, both provide background information and are inextricably related to the facts of the current charges.
 {¶ 47} Appellant's second assignment of error is without merit.
 {¶ 48} The third assignment of error is:
 {¶ 49} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for public payment of expert audio tape analysis resulting in a violation of the defendant-appellant's right to effective assistance of counsel and equal protection under the United States and Ohio Constitutions."
 {¶ 50} In his third assignment of error, appellant contends that the trial court erred when it denied his motion seeking public payment of an expert to analyze the audiotapes. At the end of an oral hearing on the matter, the trial court stated that it was going to grant the motion. However, in a judgment entry dated January 30, 2002, the trial court denied the motion.
 {¶ 51} An indigent defendant has a due process right to hire expert assistance where he can make "a particularized showing (1) of a reasonable probability that the requested expert assistance would aid in his defense, and (2) that denial of the requested expert would result in an unfair trial."[12] Thus, an indigent defendant possesses no automatic right to expert assistance but, rather, is only entitled to assistance when it is demonstrated that such assistance would aide in his defense and the lack of which would result in an unfair trial.[13] The granting of public monies to provide expert assistance is within the discretion of the trial court, and that decision will not be overturned by the reviewing court absent an abuse of discretion.[14]
 {¶ 52} In his motion requesting payment for expert assistance, appellant stated that the expert was needed in order for counsel to provide "effective and competent representation." At the hearing on the matter, appellant asserted that portions of the conversation had been omitted and proffered testimony as to that omitted conversation.
 {¶ 53} In its judgment entry denying appellant's motion, the trial court relied on a case from the Supreme Court of Ohio,State v. Sanders.[15] In Sanders, the court upheld the denial of an indigent defendant's request for an expert to analyze an audiotape. In that case, although a preliminary test of the audiotapes revealed the possibility that anomalies in the tape were present, the court found that, although the defendant demonstrated that the tape may have been edited, he did not demonstrate how that editing could have affected his case. Thus, the court found that no "particularized showing" was made that an expert would have assistance in the defense.[16]
 {¶ 54} In the instant case, the trial court noted that the factors it considered were (1) the value of the expert assistance to the defendant's proper representation at the trial of this fourth degree felony drug case, and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought. The court ultimately concluded that appellant failed to demonstrate how the sounds or conversation lacking on the tape would be a significant factor at trial. We agree. Appellant contends that the possibility exists that the audiotapes of the conversations may have been altered because there was a gap in the chain of custody. At the hearing, Detective Bowersock testified that at the conclusion of the recording he removed tabs from the tape, to prevent the tape from being recorded over. The tapes then remained in his possession until he delivered them to his secretary to be transcribed. After the tapes were transcribed and that transcription was reviewed by Bowersock and his secretary, they were transferred to storage. It was this storage that appellant contends allowed for potential altering of the tapes by another party.
 {¶ 55} We agree with the trial court that what appellant has presented are mere pronouncements that the possibility for altering existed without a particularized factual showing demonstrating that tampering occurred. Moreover, appellant never demonstrated how any altering of the tapes would have affected the ultimate outcome of the trial. The tapes themselves were not the sole piece of evidence upon which the state relied. There was also testimony from both Detective Bowersock and Smeker, which reinforced the substance of what transpired during those conversations. Thus, as no particularized showing was made in support of appellant's motion, we conclude that the trial court did not err in denying appellant's motion for public payment of expert analysis of the audiotapes.
 {¶ 56} Appellant's third assignment of error is without merit.
 {¶ 57} The fourth assignment of error is:
 {¶ 58} "The trial court erred to the prejudice of the defendant-appellant when it allowed the jury to hear and then admitted into evidence the tape recordings of the phone calls and the controlled drug buy where the state failed to authenticate the tapes as there was a gap in the chain of custody of the tapes resulting in a violation of the defendant-appellant's right to a fair trial under the United States and Ohio Constitutions."
 {¶ 59} In his fourth assignment of error, appellant asserts that the trial court erred in allowing the jury to hear, and then admitting into evidence, the audiotapes of the telephone conversations because of the gap in the chain of custody.
 {¶ 60} The admission and exclusion of evidence at trial is left to the discretion of the trial court.[17] A reviewing court will not reverse an evidentiary determination of the trial court absent an abuse of discretion.[18] When presenting evidence in the form of audiotapes, the state bears the burden of establishing a chain of custody and any breaks in that chain of custody relate to the weight, and not the admissibility, of that evidence.[19]
 {¶ 61} Moreover, "`the state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur'" and any breaks in the chain of custody go to the weight, not the admissibility, of the evidence.[20]
 {¶ 62} As discussed in the third assignment of error, supra, Detective Bowersock testified as to the procedures he followed regarding the audiotapes, both prior to and after they were transcribed. Appellant again refers to the storage of the tapes after transcription and the possibility that this gap in the chain of custody provided for alteration or tampering of the tapes. As noted above, appellant's assertion that a break in the chain of custody presented the potential for alteration or tampering of the tapes went solely to the weight to be given to the tapes, and not to the admissibility. Thus, we conclude the trial court did not err in allowing the jury to hear the tapes and admitting them into evidence.
 {¶ 63} Appellant's fourth assignment of error is without merit.
 {¶ 64} The fifth assignment of error is:
 {¶ 65} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for public payment of all transcripts thus denying his rights to equal protection and a fair trial under the United States and Ohio Constitutions."
 {¶ 66} "In a criminal case, the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal."[21] The state bears the burden of demonstrating that the transcript is not needed for an effective defense.[22]
 {¶ 67} In the instant case, appellant requested public payment of all transcripts of prior proceedings, including a suppression hearing and a hearing on appellant's motion for public payment of expert audiotape analysis. The trial court denied the motion in a judgment entry dated February 11, 2002, stating, "in the absence of more than defense counsel's bare assertion that the transcript is necessary for adequate case preparation, it is probably reversible error for the Court to grant the motion." We note that the trial court erred in applying the wrong standard to such motions. The burden remained with the state to show that the transcripts were not necessary for an effective defense.
 {¶ 68} Appellant alleged in his motion that "some of the testimony elicited by the witnesses in several evidentiary hearings before this Court was in conflict and, at times, contrary to what is reported in the discovery that counsel for defendant has been provided." In its judgment entry, the court stated that "any conflict or discrepancy between the testimony at trial and what was provided in discovery can be addressed with anin camera inspection of the discovery and a comparison with the testimony then being offered in trial." We find this to be error. As stated, the burden remained with the state to demonstrate that the transcripts were not required to provide an effective defense. Without that showing, the trial court erred in not providing appellant with the transcripts for trial preparation, particularly in light of the conflicting testimony.
 {¶ 69} Appellant's fifth assignment of error is with merit.
 {¶ 70} The sixth assignment of error is:
 {¶ 71} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 72} As we have concluded in our analysis of the first assignment of error, supra, that the trial court erred in failing to remove a juror for cause, appellant's assertion that the guilty verdict is against the manifest weight of the evidence is moot. Thus, we will not address it at this juncture.
 {¶ 73} Appellant's sixth assignment of error is moot.
 {¶ 74} The judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
Ford, P.J. and Rice, J., concur.
[1] State v. Sanders (2001), 92 Ohio St.3d 245.
[2] (Emphasis sic.) State v. Broom (1988), 40 Ohio St.3d 277,288, quoting, Gray v. Mississippi (1987), 481 U.S. 648, 665
quoting Moore v. Estelle (C.A. 5, 1982), 670 F.2d 56, 58, certiorari denied (1982), 458 U.S. 1111.
[3] Broom, at 288.
[4] State v. Williams (1997), 79 Ohio St.3d 1, 8, citingState v. Wilson (1972), 29 Ohio St.2d 203, 211.
[5] State v. Kirkbride (Apr. 1, 1994), 5th Dist. No. C.T. 93-15, 1994 Ohio App. LEXIS 1846, at *14-15; State v. Clink
(Mar. 3, 2000), 6th Dist. No. OT-99-037, 2000 Ohio App. LEXIS 733, at *11-12.
[6] Id.
[7] Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
[8] (Citations omitted.) State v. Tyler (1990),50 Ohio St.3d 24, 30-31.
[9] State v. Matthews (1992), 80 Ohio App.3d 409, 415.
[10] Id. at 416.
[11] Appellee quotes State v. Curry (1975), 43 Ohio St.2d 66,73.
[12] State v. Mason (1998), 82 Ohio St.3d 144, syllabus.
[13] Id.
[14] State v. Broom (1988), 40 Ohio St.3d 277, 283.
[15] State v. Sanders, supra.
[16] Id. at 256.
[17] State v. Dukes (Mar. 22, 1996), 11th Dist. No. 93-T-4903, 1996 Ohio App. LEXIS 1075, at *4.
[18] State v. Hardy (Oct. 10, 1997), 11th Dist. No. 96-P-0129, 1997 Ohio App. LEXIS 4588, at *14.
[19] State v. Rhodes (Dec. 14, 2001), 11th Dist. No. 2000-L-089, 2001 Ohio App. LEXIS 5650, at *16, quoting State v.Blevins (1987), 36 Ohio App.3d 147, 150.
[20] Id.
[21] State v. Arrington (1975), 42 Ohio St.2d 114, at paragraph one of the syllabus, citing Britt v. North Carolina
(1971), 404 U.S. 226.
[22] Id. at paragraph two of the syllabus.