OPINION
{¶ 1} Appellant, David A. Jackson, appeals the judgment entered by the Juvenile Division of the Portage County Court of Common Pleas. Jackson was adjudicated delinquent for possession of cocaine and committed to the Department of Youth Services for an indefinite term ranging from six months to until he reaches his 21st birthday.
 {¶ 2} On October 27, 2006, Officer James Ennemoser of the city of Kent Police Department was on routine patrol. Officer Ennemoser received a radio call requesting *Page 2 
assistance for an alleged incident of domestic violence at a residence on Walter Street. While Officer Ennemoser had responded to a previous incident at that residence, he did not know what the suspect looked like. However, Officer Ennemoser was provided with a description of the suspect, that he was a tall, 17-year-old, light-skinned, African-American male.
 {¶ 3} As Officer Ennemoser turned onto Walter Street in his marked police cruiser, a light-skinned, African-American male was walking on the street wearing a black, hooded sweatshirt. The individual "stutter-stepped" upon seeing Officer Ennemoser's vehicle. He stopped walking in his original direction, turned and briefly walked in the opposite direction, and, then, turned again and continued in his original direction. In addition, the individual pulled his hood over his face. Thinking the individual might be the suspect in the domestic violence incident, Officer Ennemoser stopped his car and approached the individual.
 {¶ 4} Officer Ennemoser asked the individual for his name, and the individual identified himself as Jackson. Officer Ennemoser asked Jackson for identification to verify his name, but Jackson was unable to produce any photo identification. Officer Ennemoser believed that the individual could have been the suspect of the domestic violence incident providing him with a false name. Officer Ennemoser asked Jackson if he had any weapons on him, including rocket launchers or hand grenades. Jackson answered "no" to the inquiry. Officer Ennemoser testified that he asked Jackson if he could do a pat-down search for weapons and that Jackson consented to the search. During the search, Officer Ennemoser noticed a plastic bag in Jackson's sweatshirt pocket. Upon inquiry from Officer Ennemoser, Jackson responded that the bag contained drugs. *Page 3 
 {¶ 5} Officer Ennemoser placed Jackson under arrest. He removed the plastic bag and discovered it contained two to three rocks, which were later confirmed to contain cocaine by testing done at the Ohio Bureau of Criminal Identification and Investigation ("B.C.I.").
 {¶ 6} Jackson was charged with possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(a), a fifth-degree felony if committed by an adult. Jackson pled not true to the complaint. Jackson filed a motion to suppress the evidence resulting from his arrest. A suppression hearing was held, where Officer Ennemoser and Jackson testified. Following the hearing, the trial court denied Jackson's motion to suppress.
 {¶ 7} The matter proceeded to a bench trial. Officer Ennemoser, Officer Bruce Bassett of the Kent Police Department, and Kenneth Ross from B.C.I testified for the state. Jackson did not present any evidence. The trial court adjudicated Jackson delinquent. Jackson was committed to the Department of Youth Services for an indefinite term ranging from six months to until he reaches his 21st birthday.
 {¶ 8} Jackson raises two assignments of error. His first assignment of error is:
 {¶ 9} "The trial court erred in denying Mr. Jackson's motion to suppress."
 {¶ 10} "Appellate review of a motion to suppress presents a mixed question of law and fact."[1] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[2] Thereafter, the *Page 4 
appellate court must independently determine whether those factual findings meet the requisite legal standard.[3]
 {¶ 11} There are three general categories in which encounters between citizens and police officers are classified. The first is a consensual encounter, the second is a brief investigatory stop, and the third is formal arrest.[4]
 {¶ 12} A police officer may approach an individual in a street or other public place for the purposes of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked.[5]
 {¶ 13} In this matter, Officer Ennemoser engaged Jackson in a consensual encounter. During that encounter, Officer Ennemoser asked Jackson for photo identification, which Jackson was unable to produce. Concerned that Jackson might be a suspect in another crime, Officer Ennemoser asked Jackson if he could conduct a pat-down search to check for weapons. At the suppression hearing, Officer Ennemoser testified that Jackson consented to the pat-down search. However, Jackson testified that he did not give Officer Ennemoser consent to conduct a pat-down search.
 {¶ 14} While there was conflicting testimony regarding whether the search was consensual, we note the trial court found the search to be consensual. Since the issue of whether Jackson gave his consent is a question of fact, we will accept the trial court's *Page 5 
finding that the pat-down search was consensual.[6] Since the search was consensual, there was no Fourth Amendment seizure.[7]
 {¶ 15} Even assuming the pat-down search was not consensual, Officer Ennemoser was still permitted to conduct the search as part of an investigatory stop. In an investigatory stop, an officer may briefly detain an individual if the individual is engaged in suspicious behavior.[8] To justify an investigatory stop, now known as aTerry stop, the officer must be able to "point to specific and articulable facts, which taken together with rational inferences with those facts, reasonably warrant an intrusion."[9]
 {¶ 16} Officer Ennemoser testified that Jackson matched the description of a suspect in a domestic violence incident. Jackson testified that he is only five feet, seven inches tall. Therefore, he argues that Officer Ennemoser could not have reasonably believed he was the suspect from the domestic violence incident, who was described as "tall." However, Officer Ennemoser testified he considers anyone over five feet, seven inches in height to be tall. Moreover, we note that Officer Ennemoser had an initial description from a recent violent incident. There is nothing in the record to reveal who initially described the suspect as "tall." Depending on the witness' viewpoint, and their own height, a five-foot, seven-inch person may be considered tall. Regardless, we do not consider the issue of height to be determinative of this matter, in that Jackson met the remaining physical description of the suspect. *Page 6 
 {¶ 17} Further, moments after the domestic violence incident, Jackson was in the immediate vicinity of the location where it occurred. Also, Jackson made furtive movements when he noticed Officer Ennemoser, by "stutter-stepping," beginning to walk in the opposite direction and, then, proceeding in his original direction, and covering his face with his hood.[10] Jackson was unable to verify his identity by photo identification,[11] and Officer Ennemoser believed the suspect in the domestic violence incident might be providing a fraudulent name. Finally, Officer Ennemoser believed Jackson might be armed with a weapon.[12]
 {¶ 18} Some of the above facts, standing alone, may not have been sufficient to justify a Terry stop. However, based on a totality of the circumstances, we conclude Officer Ennemoser had reasonable suspicion to conduct a protective pat-down search of Jackson.
 {¶ 19} During the pat-down search, Officer Ennemoser observed the bag containing the cocaine sticking out of Jackson's sweatshirt pocket, in "plain view."[13] Officer Ennemoser asked Jackson what was in the bag, and Jackson stated there were drugs in the plastic bag. At that point, Officer Ennemoser had probable cause to retrieve the drugs and place Jackson under arrest.
 {¶ 20} The trial court did not err by denying Jackson's motion to suppress.
 {¶ 21} Jackson's first assignment of error is without merit. *Page 7 
 {¶ 22} Jackson's second assignment of error is:
 {¶ 23} "The trial court's verdict is against the manifest weight of the evidence."
 {¶ 24} Jackson challenges the physical evidence on the basis that the state failed to establish a proper chain of custody.
 {¶ 25} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 26} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of facts] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[14]
 {¶ 27} "The admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."[15] "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[16]
 {¶ 28} In addition, the Supreme Court of Ohio has held, "[a]s a general matter, `the state (is) not required to prove a perfect, unbroken chain of custody.'[17] Accordingly, `(a) strict chain of custody is not always required in order for physical *Page 8 
evidence to be admissible.'[18] "[19] Moreover, any of the alleged breaks in the evidentiary chain go to the weight, instead of the admissibility, of the evidence.[20]
 {¶ 29} In this matter, Jackson does not challenge the trial court's admission of the physical evidence; rather, he challenges the weight given to the evidence by the trial court in its role as trier-of-fact.
 {¶ 30} Jackson contends there was a break in the evidence chain when the drugs were in Officer Ennemoser's vehicle. Officer Ennemoser testified he put the plastic bag in a plastic file container in his trunk and locked the trunk. He then went to assist with the domestic violence incident. When he returned to the police station, he retrieved the drugs from his trunk, and the drugs were in the exact location he left them. Jackson argues that Officer Ennemoser could have retrieved a different bag from the trunk of his car upon returning to the station. However, based upon Officer Ennemoser's testimony, the trial court had competent, credible evidence that Officer Ennemoser retrieved the same bag.
 {¶ 31} Jackson also argues that the evidence chain was broken because Officer Bassett testified that he handed the substance to "one of three clerks" and B.C.I. Officer Bassett was unable to recall the name of the person he gave the substance to. However, the state introduced state's Exhibit C, which is an evidence log from B.C.I. This document reveals the substance was accepted from Officer Bassett by Kari Maxwell at 11:17 a.m. on October 31, 2006. The state presented adequate evidence *Page 9 
regarding the chain of custody concerning the transfer of the substance from Officer Bassett to Kari Maxwell.
 {¶ 32} Finally, Jackson argues that the chain of custody was deficient because the evidence log from the Kent Police Department did not accompany the drugs to B.C.I., as is the standard procedure. Jackson misconstrues the evidence. While Officer Bassett testified the log followed the evidence wherever it went, he clarified his testimony and indicated the log is separated from the evidence when the evidence is submitted to B.C.I. for testing.
 {¶ 33} The chain of evidence in this matter was not so deficient as to render the evidence unreliable. In addition, we note there was independent evidence that the substance was drugs. Officer Ennemoser testified that Jackson informed him the bag contained "dope."
 {¶ 34} The trial court did not lose its way or create a manifest miscarriage of justice by finding Jackson guilty of possession of cocaine.
 {¶ 35} Jackson's second assignment of error is without merit.
 {¶ 36} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J., concur.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.
[2] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[3] Id., citing State v. McNamara (1997), 124 Ohio App.3d 706.
[4] State v. Long (1998), 127 Ohio App.3d 328, 333.
[5] Florida v. Bostick (1991), 501 U.S. 429, 434.
[6] State v. Burnside, supra, at ¶ 8.
[7] Florida v. Bostick, 501 U.S. at 434.
[8] Terry v. Ohio (1968), 392 U.S. 1.
[9] Id. at 21.
[10] See, e.g., State v. McDonald (Aug. 27, 1993), 11th Dist. No. 91-T-4640, 1993 Ohio App. LEXIS 4152, at *12-13.
[11] See, e.g., State v. Helton, 11th Dist. No. 2005-A-0043,2006-Ohio-2494, at ¶ 44.
[12] Terry v. Ohio, 392 U.S. 1, syllabus. See, also, State v.King, 11th Dist. No. 2003-A-0018, 2004-Ohio-2598, at ¶ 13.
[13] State v. Brown, 11th Dist. No. 2001-L-168, 2002-Ohio-6930, at ¶ 21-26.
[14] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[15] State v. Nolling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citingState v. Issa (2001), 93 Ohio St.3d 49, 64.
[16] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[17] State v. Keene (1998), 81 Ohio St.3d 646, 662.
[18] State v. Wilkins (1980), 64 Ohio St.2d 382, 389.
[19] State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, at ¶ 57.
[20] State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, at ¶ 43, citing State v. Richey (1992), 64 Ohio St.3d 353, 360. See, also,State v. Freshwater, 11th Dist. No. 2002-L-041, 2004-Ohio-384, at ¶60. *Page 1