[Cite as *State v. Guyton*, 2016-Ohio-8110.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2016-A-0023 |
| EDWIN M. GUYTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2015 CR 00380.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Desirae D. DiPiero Chieffo,* 7330 Market Street, Youngstown, OH 44512 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Edwin M. Guyton, appeals his conviction for Operating a Vehicle While Under the Influence. The issues before this court are whether a trial court commits plain error by admitting a 911 recording into evidence, where the recording is introduced during the testimony of the witness making the call but is not otherwise authenticated, and whether a defendant is deprived of effective

assistance of counsel by counsel's failure to object to the admission of such 911 recording. For the following reasons, we affirm the decision of the court below.

{¶2} On August 19, 2015, the Ashtabula County Grand Jury returned an Indictment, charging Guyton with Operating a Vehicle While Under the Influence, a felony of the third degree in violation of R.C. 4511.19(A)(1)(f) ("[t]he person has a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood") and (G)(1)(e) ("offender * * * has been convicted of or pleaded guilty to a violation of division (A) of this section that was a felony"); and Operating a Vehicle While Under the Influence, a felony of the third degree in violation of R.C. 4511.19(A)(1)(a) ("[t]he person is under the influence of alcohol, a drug of abuse, or a combination of them") and (G)(1)(e). Both Counts included R.C. 2941.1413 specifications that "the offender, within twenty years of committing the offense[s], previously had been convicted of or pleaded guilty to five or more equivalent offenses."

{¶3} On August 25, 2015, Guyton appeared for arraignment and entered a plea of not guilty.

{¶4} On February 23 and 24, 2016, the case was tried before a jury. The following testimony and evidence were presented by the State.

{¶5} Allyson Heinz testified that, on June 16, 2015, she was working at Circle K on Main Avenue in Ashtabula. At about 3:00 a.m., she "noticed a car pulling into the driveway and stepping on the brakes repeatedly, attempting to pull up to the gas pumps and narrowly hitting [sic] them." After sitting in the vehicle "awhile," Guyton exited, approached Heinz, told her that he was "fucked up," and asked her to pump gas for him.

2

Heinz asked him "if everything was okay." Guyton responded "yes," and gave her money for gas. Heinz returned to the store and called 911 from her cell phone to report an impaired driver. Heinz assisted Guyton in pumping the gas because he was unable to place the pump nozzle into the neck of the gas tank. While assisting Guyton, Heinz remained connected with the dispatcher.

{¶6} Heinz described Guyton as noticeably intoxicated: he smelled of alcohol, stumbled, and slurred his words.

{¶7} A recording of the 911 call was played for the jury. During the course of the call, Heinz reported that Guyton drove away from the gas station "towards the Bunker Hill area."

{¶8} After "five to ten minutes," Guyton returned to the Circle K. "He attempted to pull into one of the parking spaces by the store, and he was in two or three parking spaces." Guyton said he needed gas and, when Heinz told him he had just received gas, he began to argue with her. Heinz told him to pull his vehicle up to a pump and she would put gas in it. Guyton asked if Heinz could move the vehicle and she replied that she was not allowed to do that. Guyton moved his vehicle "into the middle of the parking lot in between the parking spaces and the pumps." Heinz went inside the store and called 911 again.

{¶9} A recording of the second 911 call was played for the jury.

{¶10} Heinz went back outside and Guyton became agitated because she would not move the vehicle. He then asked her to help hold his pants up. Heinz held his pants at waist level until the police arrived.

3

**{¶11}** Patrolman Dan Gillespie of the Ashtabula Police Department testified that, on June 16, 2015, he responded to a report of a possible intoxicated driver at Circle K in Ashtabula. He encountered Guyton standing in the doorjamb of his vehicle, with Heinz holding his pants up. The keys to the vehicle were in the ignition and the engine was idling. Gillespie walked Guyton to the Circle K building. He noted that Guyton had a strong odor of alcohol about him, almost fell over while walking, slurred his speech, and had difficulty speaking and understanding what was said to him. Guyton said that his girlfriend had driven him to the Circle K.

**{¶12}** Officer Gillespie requested that Guyton perform field sobriety tests, which request Guyton refused for the reason that the officer had not observed him operate a vehicle. Gillespie placed Guyton under arrest for Operating a Vehicle While Under the Influence. Guyton was transported to the Ashtabula County Medical Center where his blood was drawn.

**{¶13}** Douglas Rhode, the supervisor of chemistry and toxicology at the Lake County Crime Laboratory in Painesville, testified that he tested Guyton's blood using gas chromatography and determined that "the whole blood ethanol result is 0.283 grams per 100 milliliters." Rhode noted that, at .08 grams per 100 milliliters, "all individuals will exhibit impairment while driving a vehicle."

**{¶14}** Rhode also performed a retrograde extrapolation, "a mathematical calculation to determine a blood alcohol concentration at a particular point in time." Rhode explained that this was necessary because Guyton's sample was collected outside the three-hour "window of opportunity" established by law. Assuming that Guyton did not consume alcohol after 2:31 a.m. on the morning in question, his blood

4

alcohol concentration at 3:01 a.m. would be between .341 and .395 grams per 100 milliliters. Assuming that Guyton did consume alcohol after 2:31 a.m. on the morning in question, his blood alcohol concentration at 3:01 a.m. would be between .278 and .320 grams per 100 milliliters. In either case, Rhode testified to a reasonable degree of scientific certainty that Guyton would have been impaired.

{¶15} The parties entered into a joint stipulation that Guyton "is the person convicted of five prior ovi convictions as identified in the specification of counts one and two of the indictment."

{¶16} On February 24, 2016, the jury returned its verdict, finding Guyton guilty on both counts of Operating a Vehicle While Under the Influence.

{¶17} On the same day, a sentencing hearing was held. The trial court merged Count One, R.C. 4511.19(A)(1)(f) ("[t]he person has a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood"), into Count Two, R.C. 4511.19(A)(1)(a) ("[t]he person is under the influence of alcohol, a drug of abuse, or a combination of them"). The court sentenced Guyton to serve three years in prison for Operating a Vehicle While Under the Influence consecutively to five years in prison for the repeat-offender specification for an aggregate prison sentence of eight years. Guyton was ordered to serve this prison sentence consecutively to the prison sentence imposed in Ashtabula C.P. No. 2014 CR 00446. The court further imposed a mandatory fine of $1,350 and a lifetime license suspension and ordered Guyton to complete an alcohol addiction program.

{¶18} On February 25, 2016, the Judgment Entry of Sentence was journalized.

5

**{¶19}** On March 18, 2016, Guyton filed a Notice of Appeal. On appeal, he raises the following assignments of error:

**{¶20}** "[1.] The trial court committed plain error when it admitted the 911 audio recordings."

**{¶21}** "[2.] Whether counsel was ineffective by failing to object to the admission of the 911 audio recordings."

**{¶22}** Under the first assignment of error, Guyton argues the trial court committed plain error by admitting the 911 audio recording into evidence. Guyton contends the recording was inadmissible because it was not properly authenticated and constituted hearsay.

**{¶23}** "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus.

**{¶24}** The failure to object to the admission of testimony or evidence waives all but plain error. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). To support a finding of plain error, "there must be an error, *i.e.*, a deviation from a legal rule"; "the error must be plain * * * meaning * * * an 'obvious' defect in the trial proceedings"; and "the error must have affected 'substantial rights' * * * mean[ing] that the trial court's error must have affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d

6

1240 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶25}** "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "This low threshold standard does not require *conclusive* proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be." (Citation omitted.) *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶ 21.

**{¶26}** For the purposes of authentication, "[i]dentification of a voice" may be made "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Evid.R. 901(B)(5). Thus, a witness is competent to identify his own voice in a recording. *State v. Riddle*, 7th Dist. Mahoning Nos. 99 CA 147, 99 CA 178, and 99 CA 204, 2001-Ohio-3484, ¶ 34 ("pursuant to Evid.R. 901(B)(5), a witness may identify his own voice").

**{¶27}** In the present case, the State played the recordings of two 911 calls made by Heinz, who never testified that it was her voice in the recordings or that the recordings were fair and accurate representations of the calls that she made to 911. Appellant's brief at 8. The failure to authenticate the recordings, however, does not rise to the level of plain error as it did not affect the outcome of the trial.

7

{¶28} The recordings were played during Heinz' testimony and she gave no indication that the recordings were anything but true and accurate. As the recordings were played, the prosecutor repeatedly asked Heinz for clarification about what she and Guyton were doing during the 911 calls. For example, on the recording Heinz is heard to say, "he's heading towards the Bunker Hill area." The prosecutor asked if she meant that Guyton left the gas station while she was still on the phone. Heinz confirmed that this was the case. Again, the prosecutor asked about the number from which the call in the recording was placed and Heinz explained that she called from her cellular phone. Again, the prosecutor asked about a fifty second period of silence on the recording and Heinz explained that she was pumping gas for Guyton as well as trying to view his license plate number during this time.

{¶29} Although it would have been proper for the prosecutor to ask Heinz to confirm that it was her voice in the recordings and that the recordings were accurate reproductions of the 911 calls, there was no suggestion in Heinz' testimony that the recordings were not what the State claimed them to be. Moreover, the substance of the recordings was wholly consistent with Heinz' in-court testimony as to what occurred on the night in question.

{¶30} Guyton further argues that the State "presented no evidence whatsoever of chain of custody for the 911 audio recordings," thus further compromising their authenticity. Appellant's brief at 9.

{¶31} "The chain of custody of a piece of evidence is part of the authentication and identification requirement of Evid.R. 901." *State v. Rhodes*, 11th Dist. Lake No. 2000-L-089, 2001 Ohio App. LEXIS 5650, 16 (Dec. 14, 2001). "A strict chain of custody

is not always required in order for physical evidence to be admissible." *State v. Wilkins*, 64 Ohio St.2d 382, 389, 415 N.E.2d 303 (1980). Rather, "[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987). "[A]ny of the alleged breaks in the evidentiary chain go to the weight, instead of the admissibility, of the evidence." *In re Jackson*, 11th Dist. Portage No. 2006-P-0119, 2007-Ohio-4955, ¶ 28; *State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992) ("[t]he possibility of contamination goes to the weight of the evidence, not its admissibility").

**{¶32}** In the present case, the absence of any doubt, hesitation, or confusion in Heinz' testimony regarding the content of the 911 recordings demonstrates with reasonable certainty that alteration of the recordings did not occur. It has been observed that the necessity of establishing the chain of custody is more critical with respect to physical evidence than to audio recordings, where authentication by the person making the statements in the recordings serves to preclude the likelihood of tampering or alteration. *State v. Sprouse*, 10th Dist. Franklin No. 05AP-467, 2006-Ohio-7329, ¶ 32 ("[the defendant's] 'chain of custody' argument [was] better suited to evidence that cannot be readily identified, or could be despoiled, altered, or subject to tampering") (citation omitted).

**{¶33}** Finally, Guyton contends that the "911 audio was offered to improperly bolster the testimony of Ms. Heinz," and, as such, did not qualify for admission of a prior consistent statement. Appellant's brief at 9.

**{¶34}** Contrary to Guyton's position, the 911 recordings constitute admissible hearsay under the present sense exception to the hearsay rules. This rule allows for

9

the admission of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1); *State v. Daniels*, 8th Dist. Cuyahoga No. 103663, 2016-Ohio-7299, ¶ 20 ("[p]recedent overwhelmingly supports the conclusion that 911 calls are admissible either as excited utterances or present sense impressions") (citation omitted).

**{¶35}** In the 911 recordings at issue herein, Heinz was reporting events as she witnessed them and, thus, the statements were admissible. *State v. Urso*, 195 Ohio App.3d 665, 2011-Ohio-4702, 961 N.E.2d 689, ¶ 69 (11th Dist.) ("during his 911 call, Mr. Beil described appellant's reckless driving as he was perceiving it").

**{¶36}** We find no plain error with respect to the admission of the 911 recordings. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 187-188 (in a capital murder case, the alleged failure to authenticate and establish a chain of custody for a 911 recording did not rise to the level of plain error).

**{¶37}** The first assignment of error is without merit.

**{¶38}** In his second assignment of error, Guyton argues that he received ineffective assistance of counsel. He asserts that there was a reasonable probability that, if trial counsel had objected to the admission of the 911 audio recordings which were not authenticated and which constituted inadmissible hearsay and improper bolstering, the result of the trial would have been different. Appellant's brief at 11.

**{¶39}** To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the

10

defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *Id.* at 389.

{¶40} In the present case, there is no reasonable probability that the outcome of the trial would have been different had counsel objected to the admission of the 911 recordings. Heinz was questioned repeatedly about the statements made in the recordings and the circumstances in which they were made. There is no reason to believe that, if asked, she would not have authenticated the recordings. And if counsel had objected to their admissibility as hearsay, such objection would have been overruled for the reasons set forth above.

{¶41} In the broader context of Guyton's defense, Guyton did not contest the issue of his intoxication at trial, but, rather, maintained that he was not operating a motor vehicle. Heinz, however, testified that she witnessed Guyton operate the vehicle on two occasions and that no one else was present in the vehicle. Although he did not observe Guyton operate a vehicle, Officer Gillespie corroborated Heinz' testimony that no one else was present in the vehicle. Thus, there was compelling probative evidence of Guyton's guilt even apart from the 911 recordings. Assuming arguendo that trial counsel was deficient for not objecting to the admission of the 911 recordings, the outcome of the trial in this case was not fundamentally unfair.

{¶42} The second assignment of error is without merit.

11

{¶43} For the foregoing reasons, Guyton's conviction for Operating a Vehicle While Under the Influence is affirmed.  Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.