JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-Defendant Sherron Alexander ("Appellant") appeals from his convictions for drug trafficking and possession of drugs in an amount equal to or exceeding 100 grams. For the reasons set forth below, we affirm.
 {¶ 2} The record reveals the following facts. Detective Klamert ("Klamert") received information from a confidential informant that a black male, approximately six feet tall, 240 pounds and known as "Q," was selling drugs at 3207 West 92nd Street. The informant also provided Klamert with a cellular telephone number for "Q." Based on this information, Klamert obtained a subpoena to the phone carrier for the information on that number and learned that the number belonged to a Sabriye Inal. Klamert further learned that Sabriye Inal previously made a police report for identity theft.
 {¶ 3} Klamert, however, was unable to find any information on "Q." Therefore, the informant drove with Klamert to the 3207 West 92nd address where he indicated "Q" resided. Klamert maintained surveillance on the West 92nd address. Additionally, the informant provided Klamert with another cellular telephone number for "Q," which was listed to the Appellant.
 {¶ 4} A controlled buy from the Appellant was arranged and the informant was given $60 in Cleveland Police Department ("CPD") money that Klamert photocopied. Klamert and the informant drove to the residence of 3207 West 92nd Street. Klamert observed the informant knock on the door, enter the residence, and approximately two to three minutes later, exit the residence. The informant was searched and found to have three rocks of crack cocaine, but no money. The three rocks of crack cocaine recovered from the informant were introduced as State's Exhibit 1 at the trial of this matter.
 {¶ 5} After the buy, Klamert obtained a search warrant for the residence of 3207 West 92nd Street. On September 19, 2003, members of the CPD set up a surveillance unit of the residence. Klamert observed a black male fitting the description of "Q" exit the downstairs unit of the home and get into a parked vehicle in front of the house. He sat in the vehicle for a few minutes and then exited the vehicle and proceeded to 3207 West 92nd Street, the upstairs unit. The male went inside the residence for a short time, then exited and drove away in his vehicle.
 {¶ 6} Klamert checked the license plate of the vehicle and learned that the plate did not match the vehicle the male was driving. Klamert radioed for surveillance detectives to stop the vehicle. The driver was identified as Renardo Berry ("Berry"), who had a rock of crack cocaine in his possession. Berry informed the police that he had just purchased the crack cocaine from his neighbor, an overweight black male. Berry told the police he resided at 3209 West 92nd Street.
 {¶ 7} Detective Klamert continued his surveillance of the residence and observed a black male fitting the description of "Q" exit the upstairs unit of 3207 West 92nd Street and approach a Blazer while looking back and forth. While at the Blazer, the male, later identified as the Appellant, repeatedly leaned in and out of the vehicle and at one point, cupped his hand as if showing the occupants of the vehicle something. Klamert believed the Appellant was involved in a drug transaction and notified the other detectives to proceed in executing the search warrant. As the units transcended upon the Appellant, he fled and ran towards the residence. Klamert observed the Appellant throw an object that was never recovered.
 {¶ 8} The detectives apprehended the Appellant, who stated that his name was Sherron Alexander. Klamert advised the Appellant of the search warrant, as well as his Miranda rights. When asked whether anyone was in the residence, Appellant maintained there was not. Klamert and the other detectives entered the residence with Appellant and found four individuals in the living room playing video games and a female with two small children.
 {¶ 9} During a systematic search of the residence, detectives discovered three large bags containing crack cocaine in the dirt of a large plant in the living room. These bags were introduced into evidence at the trial of this matter as State's Exhibit 2. The detectives also found a large rock of crack cocaine in the kitchen above the door jam and three bags of crack cocaine in the dining room above the door jam. These items were introduced into evidence at the trial of this matter as State's Exhibit 3 and 4, respectively. Additionally, detectives discovered a sock with $3,100, which contained the CPD buy money, and a scale. The detectives further seized personal papers establishing that Appellant was the resident of the apartment. Several cellular phones were also seized including the phone listed to Appellant with the phone number used by the informant. Four driver's licenses were also found at the residence, one of which belonged to Sabriye Inal, who had reported her license missing and made a identity theft report to the police. The detectives prepared an inventory sheet listing all items retrieved from the residence. This sheet was introduced into evidence at the trial as State's Exhibit 21.
 {¶ 10} Appellant was then arrested and was indicted on eight counts: count two alleged drug trafficking in an amount equal to or exceeding 100 grams of crack cocaine in violation of R.C. 2925.03, with a major drug offender specification; count three alleged possession of drugs in an amount equal to or exceeding 100 grams of crack cocaine in violation of R.C. 2925.11, with a major drug offender specification; count four alleged possession of criminal tools in violation of R.C. 2923.24; count five alleged drug trafficking in an amount less than one gram of crack cocaine in violation of R.C. 2925.03; count six alleged drug trafficking in an amount less than one gram of crack cocaine in violation of R.C. 2925.03; and count seven alleged possession of drugs in an amount less than one gram of crack cocaine in violation of R.C. 2925.11. Counts one and eight did not apply to Appellant. Appellant was arraigned and pled not guilty to all counts in the indictment.
 {¶ 11} On October 18, 2004, Appellant signed a jury waiver form and the case proceeded to trial. At trial, the state presented the testimony of Cynthia Lewis, a scientific examiner for seven years with the City of Cleveland, Division of Police. Lewis testified that she performs drug analysis and has testified as an expert in Cuyahoga County hundreds of times. In this case, she identified State's Exhibit 1 as three knotted bags containing rock-like material. She testified that she performed an analysis on these bags and discovered that the contents of the bags contained cocaine that weighed .47 grams.
 {¶ 12} Lewis also identified State's Exhibit 3. She testified that she analyzed this bag as well and determined the bag contained cocaine that weighed 3.51 grams.
 {¶ 13} Lewis identified State's Exhibit 4 as three bags which contained rock-like material. The contents of the bags tested positive for cocaine and weighed 6.37 grams.
 {¶ 14} Lewis also testified in regard to the weight of State's Exhibit 2. She testified that she analyzed and weighed State's Exhibit 2 on September 23, 2003. Based on her examination, State's Exhibit 2 weighed 94.38 grams and was positive for cocaine. When questioned as to why State's Exhibit 2 weighed only 88.54 grams when an independent drug test was done in April 2004, less than the 94.38 grams she reported, Lewis testified that when she received the drugs at issue, she noted water was present. She further explained that water is normally present in crack cocaine because it is a necessary component in the process of transforming cocaine into crack cocaine. She testified that over time, water in the crack cocaine is expected to evaporate, which would cause the crack cocaine to lose weight. Finally, Lewis testified that in her expert opinion the weight of State's Exhibit 2 was 94.38 grams on September 23, 2003. The independent drug test was not introduced into evidence by the state or the Appellant.
 {¶ 15} During the cross-examination of Lewis, defense counsel concentrated on the inadequacy of the test to determine the amount of State's Exhibit 2 that actually contained the illegal substance of cocaine and the amount of the Exhibit that contained merely water, a legal substance. Lewis, however, rebutted defense counsel's argument and pointed to the drug trafficking and drug possession statutes which state that a person is guilty of these offenses if the drugs are "a compound, mixture, preparation, or substance containing cocaine." R.C. 2925.03(C)(4)(g); R.C. 2925.11(C)(4)(d).
 {¶ 16} At the close of the state's case, as well as the close of the defense's case, defense made a motion for Crim. R. 29 judgment on acquittal. The court denied both motions.
 {¶ 17} On October 18, 2004, the court returned a guilty verdict on counts two through seven. The court also found Appellant guilty of the major drug offender specifications found in counts two and three. The Appellant was sentenced to a mandatory ten years at the Lorain Correctional Institution for counts two and three to run concurrent with each other with no additional time for the major drug offender specification. Additionally, the court imposed a mandatory ten year concurrent prison sentence for counts four, five, six and seven to be served concurrently with the ten year sentence in counts two and three.
 {¶ 18} Appellant now appeals his convictions for counts two and three of the indictment and submits three assignments of error for our review.
 {¶ 19} The first assignment of error states:
 {¶ 20} "Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when his attorney failed to introduce the independent drug report."
 {¶ 21} In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L. Ed.2d 674, 104 S. Ct. 2052; Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at paragraph two of the syllabus; see, also, Strickland, supra, at 687.
 {¶ 22} The Appellant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "[m]ust indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689; see, also,State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.
 {¶ 23} In his first assignment of error, Appellant asserts that trial counsel's performance was deficient in that any reasonably effective counsel would have introduced the independent drug report because the report measured State's Exhibit 2 as containing 88.54 grams of crack cocaine, bringing the total weight of the illegal cocaine confiscated from Appellant's residence to less than 100 grams. We disagree.
 {¶ 24} To introduce the independent drug report into evidence at the trial of this matter, defense counsel would have had to properly authenticate the report by providing the testimony of the expert who prepared the report. Evid. R. 417. Keeping this in mind, we find it difficult to assess how the case was affected by the lack of the independent drug report and expert witness to support the defense.
 {¶ 25} In his appellate brief, Appellant has not named or directed the court to the expert whose testimony could have authenticated the report and helped his case. He argues that the failure "to introduce into evidence the independent drug analysis report which indicated that State's Exhibit 2 weighed 88.54 gram of cocaine" was a failure to competently represent Appellant. Nowhere, however, does Appellant show that an expert would have been available to him at trial to testify as to the authenticity of report.
 {¶ 26} Additionally, we note that counsel would not have presented an expert if the expert's testimony would have hindered his client's case. Appellant's argument assumes that counsel bypassed an expert who would have presented favorable testimony for him. In order to support Appellant's case, the expert would have had to testify that the crack cocaine tested in State's Exhibit 2 did not weigh 94.38 grams on September 23, 2003, the date the state's expert weighed the drugs. If the expert could not so testify, counsel could not have presented testimony to assist in Appellant's case. As we do not have any testimony by an expert, we cannot foresee the substance of the testimony. Thus, Appellant's argument claiming ineffective counsel lacks merit.
 {¶ 27} Furthermore, the decision to introduce into evidence the independent drug report, which would have required calling an expert witness to testify as to its authenticity, is a matter of trial strategy, and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel. See State v. Williams
(1991), 74 Ohio App.3d 686, 695, 600 N.E.2d 298. Moreover, the failure to call an expert witness and instead rely on cross-examination does not in itself constitute ineffective assistance. See State v.Madrigal, 87 Ohio St.3d 378, 400, 2000-Ohio-448, 721 N.E.2d 52; State v.Nicholas (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225; State v.Thompson (1987), 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (concluding that counsel was not ineffective for choosing to cross-examine the state's expert instead of requesting the appointment of a forensic pathologist).
 {¶ 28} Appellant has not met his burden of establishing that the trial strategy of defense counsel in cross-examining the state's expert witness, rather than introducing the report and providing Appellant's own expert on the weight of the crack cocaine, amounted to deficient representation or prejudice to the defense. A review of the record in this case reveals that counsel's decision not to call an expert was well within the standard of reasonable trial tactics.
 {¶ 29} In this case, the state's expert, Cheryl Lewis, testified that she analyzed and weighed State's Exhibit 2 on September 23, 2003. She determined that State's Exhibit 2 weighed 94.38 grams and contained cocaine. When questioned as to why State's Exhibit 2 weighed only 88.54 grams when the independent drug test was done in April 2004, less than the 94.38 grams she reported, Lewis testified that when she received the drugs at issue, she noted water was present. She explained that water is generally present in crack cocaine because it is a necessary component in the process of transforming cocaine into crack cocaine. She further testified that crack cocaine loses weight over time because the water in the crack cocaine evaporates.
 {¶ 30} Defense counsel also cross-examined Lewis, attempting to assert that her examination of State's Exhibit 1 was inadequate as she failed to determine the amount of the Exhibit that actually contained the cocaine and the amount of the Exhibit that contained the legal substance of water. Defense counsel maintained that his client should not be punished for possessing a legal substance such as water. Lewis, however, rebutted Appellant's argument and pointed to the drug trafficking and drug possession statutes which state that a person is guilty of these offenses if the drugs are "a compound, mixture, preparation, or substance containing cocaine." R.C. 2925.03(C)(4)(g); R.C. 2925.11(C)(4)(d).
 {¶ 31} Given the foregoing, it is mere speculation to assert that another expert would have testified such that the results of Appellant's trial would have been different. Accordingly, Appellant has failed to establish that defense counsel's representation was deficient and that the result is unreliable. Therefore, Appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error states:
 {¶ 33} "The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Appellant was guilty of drug trafficking as charged in count two and possession of drugs as charged in count three."
 {¶ 34} Within this assignment of error, Appellant asserts that the state did not present sufficient evidence that Appellant had possession of crack cocaine or prepared for shipment or prepared for distribution crack cocaine. In support of this proposition, Appellant maintains that the amount of crack cocaine confiscated at the Appellant's residence was not in an amount equal to or exceeding 100 grams. Appellant does not challenge any other elements of the two charged offenses. Accordingly, we need only address the issue of whether the evidence was sufficient to establish that there was crack cocaine in an amount equal to or exceeding 100 grams.
 {¶ 35} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 36} The Appellant was charged and convicted of trafficking in drugs. R.C. 2925.03(C)(4)(g) defines drug trafficking in cocaine as follows:
 {¶ 37} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 38} "* * * (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
 {¶ 39} "* * * (g) If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D) (3) (b) of section 2929.14 of the Revised Code. * * *."
 {¶ 40} The Appellant was also charged and convicted of drug possession. Possession of drugs is defined in R.C. 2925.11(C)(4)(d) as follows:
 {¶ 41} "* * * (C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 42} "* * * (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
 {¶ 43} "* * * (d) If the amount of the drug involved equals or exceeds one hundred grams but is less than five hundred grams of cocaine that is not crack cocaine or equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."
 {¶ 44} The record demonstrates that Lewis, the state's expert, weighed and tested State's Exhibit 2 on September 23, 2003 and determined that the Exhibit weighed 94.38 grams and contained cocaine. When questioned as to why State's Exhibit 2 weighed only 88.54 grams when the independent drug test was done in April 2004, less than the 94.38 grams she reported, Lewis testified that when she received the drugs at issue, she noted water was present. She further explained that water is present in crack cocaine because it is a necessary component in the process of transforming cocaine into crack cocaine. She testified that over time, water in the crack cocaine is expected to evaporate, which would cause the crack cocaine to lose weight. Finally, Lewis testified that in her expert opinion the weight of State's Exhibit 2 was 94.38 grams on September 23, 2003.
 {¶ 45} Defense counsel cross-examined Lewis, choosing to concentrate on the inadequacy of the test to determine the amount of State's Exhibit 2 that actually contained the illegal substance of cocaine and the amount of the Exhibit that contained merely water. Lewis, however, rebutted defense counsel's argument and pointed to the drug trafficking and drug possession statutes which state that a person is guilty of these offenses if the drugs are "a compound, mixture, preparation, or substance containing cocaine." R.C. 2925.03(C)(4)(g); 2925.11(C)(4)(d).
 {¶ 46} Viewing the foregoing evidence in a light most favorable to the state, the trial court reasonably inferred from the evidence that State's Exhibit 2 contained 94.38 grams of crack cocaine. Lewis explained the discrepancy in the weight of State's Exhibit 2 on September 23, 2003 when she weighed the Exhibit and the weight of the same Exhibit in April 2004. Additionally, she rebutted defense counsel's cross-examination by pointing to the pertinent statutes. In light of this evidence, we find that reasonable minds could have reached the same conclusion as the trial court and found that State's Exhibit 2 weighed 94.38 grams, bringing the total weight of cocaine confiscated from Appellant's home to more than 100 grams. Therefore, sufficient evidence existed to support Appellant's conviction for drug trafficking and possession of drugs. Accordingly, the second assignment of error is without merit.
 {¶ 47} Appellant's third assignment of error states:
 {¶ 48} "Appellant's conviction for drug trafficking as charged in count two and for possession of drugs as charged in count three was against the manifest weight of the evidence."
 {¶ 49} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 50} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 51} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S. Ct. 2211, 72 L. Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 52} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 53} In this matter we cannot conclude that the court lost its way. As stated previously, Cheryl Lewis, the state's expert, testified that on September 23, 2003, State's Exhibit 2 weighed 94.38 grams and was positive for cocaine. Additionally, she explained the discrepancy in the state's evaluation of the weight of State's Exhibit 2 and the weight obtained in an independent drug test done in April 2004. She testified that the reason State's Exhibit 2 weighed 88.54 grams in April 2004, less than the 94.38 grams she claimed it weighed on September 23, 2003, is because the water in the crack cocaine evaporated. She explained that generally water is present in crack cocaine because it is a necessary component in the conversion of cocaine into crack and over time the crack cocaine loses weight due to evaporation. Thus, in the instant matter, State's Exhibit 2 would have necessarily weighed more in September 2003 than it weighed more than six months later, in April 2004.
 {¶ 54} Defense counsel also cross-examined Lewis, concentrating on the inadequacy of the test to determine the amount of State's Exhibit 2 that actually contained the illegal substance of cocaine and the amount of the Exhibit that contained merely water, a legal substance. Lewis, however, rebutted defense counsel's argument and pointed to the drug trafficking and drug possession statutes which state that a person is guilty of these offenses if the drugs are "a compound, mixture, preparation, or substance containing cocaine." R.C. 2925.03(C)(4)(g); R.C. 2925.11(C)(4)(d).
 {¶ 55} In light of the foregoing, we cannot disagree with the trial court's resolution finding Appellant guilty of drug trafficking and possession of drugs in an amount in excess of 100 grams of cocaine. First, Lewis explained the discrepancy between the difference in the weight of State's Exhibit 2 on September 23, 2003 when she weighed the Exhibit and the lesser weight in April 2004 when an independent drug analysis was conducted. Additionally, during cross-examination, Lewis explained the reason for weighing both the legal and illegal components of State's Exhibit 2 together as opposed to weighing only the illegal substance. Accordingly, we find that the evidence supports the conclusion that State's Exhibit 2 weighed 94.38 grams, bringing the total weight of cocaine confiscated from Appellant's residence to more than 100 grams. Appellant's third assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs. McMonagle, J., concurs in judgment only (seeattached concurring opinion)
 CONCURRING OPINION