OPINION *Page 2 
{¶ 1} Defendant-appellant William Jones appeals from his four drug trafficking convictions entered in the Mahoning County Common Pleas Court. On appeal, he claims that his conviction for selling ten grams or more of crack cocaine was supported by insufficient evidence, was against the manifest weight of the evidence and violated the equal protection clause where the state allegedly used the wet weight rather than the dry weight of the substance. He also urges that a school specification was unsupported for one of the offenses. Lastly, he contends that the admission of character evidence and other acts evidence was improper. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} A confidential informant (CI) purchased drugs from appellant under police supervision on three occasions. On May 18, 2005, the CI went to 3303 Idlewood Drive in Youngstown, which is across the street from Sheridan Elementary School, and purchased from appellant seventeen Vicodin pills, resulting in the first drug trafficking count, and less than one gram of crack cocaine, resulting in the second drug trafficking count. Both were elevated from fifth degree felonies to fourth degree felonies due to the transaction taking place within 1000 feet of a school.
 {¶ 3} On May 27, 2005, the CI went to the Idlewood address and entered a vehicle where appellant sold her crack cocaine with a reported weight of 4.69 grams. This resulted in count three, trafficking in one gram or more but less than five grams of crack cocaine, a third degree felony due to allegations that the transaction also took place within 1000 feet of the school.
 {¶ 4} On July 21, 2005, the CI went to 568 W. LaClede in Youngstown and purchased from appellant crack cocaine with a reported weight of 10.31 grams. This offense is represented by count four, trafficking in ten grams or more but less than twenty-five grams of crack cocaine, a second degree felony.
 {¶ 5} Appellant was indicted on these four counts in September 2005. He then filed a motion to have the substances retested by an independent laboratory at state's expense and to require the trial testimony of the state's experts who tested the substances. His motions were granted. *Page 3 
 {¶ 6} The case was tried to a jury. On January 6, 2006, the jury found appellant guilty as charged on all four counts. On January 9, 2006, the sentencing hearing proceeded. The court sentenced appellant in a January 13, 2006 entry to one and one half years on counts one and two to run concurrently. The court sentenced appellant to five years on count three and a mandatory sentence of five years on count four to run consecutively to each other and to the eighteen-month sentence. Appellant filed timely notice of appeal.
 FACTS RELEVANT TO ASSIGNMENTS OF ERROR NUMBERS ONE ANDTWO {¶ 7} Both assignments of error numbers one and two concern the weight of the crack cocaine sold on July 21, 2005, which resulted in count four. As aforementioned, count four entails trafficking in crack cocaine in an amount equal to or exceeding ten grams but less than twenty-five grams, a second degree felony. See R.C. 2925.03(A)(1),(C)(4)(e). Appellant notes that if the amount of crack cocaine involved in count four was less than ten grams (and more than five grams), the offense would have only been a third degree felony. R.C.2925.03(A)(1),(C)(4)(d). He seeks reduction of the degree of count four based on various arguments. The following facts are pertinent to these arguments.
 {¶ 8} Testimony established how crack cocaine is manufactured. Powder cocaine (hydrocholoride salt form) is poured into boiling water and some baking soda is added. A chemical reaction occurs, which converts the salt form to the base form (the rocks of crack). (Tr. 314, 374). The rocks fall to the bottom and are then filtered out. (Tr. 374). Thereafter, some dealers will dry the crack cocaine in the freezer or further cook it in a microwave or oven in order to remove excess moisture. (Tr. 315, 374).
 {¶ 9} When the CI purchased the drugs from appellant on July 21, 2005, she mentioned that the crack cocaine was still wet, and appellant mentioned that he had just cooked it. (Tr. 373). The CI related this to the supervising officer, who confirmed that he could see approximately a teaspoon of water at the bottom of the bag containing the crack cocaine. (Tr. 373, 380-381).
 {¶ 10} In late July 2005, Kenneth Ross, a forensic scientist with the Ohio Bureau of Criminal Investigation and Identification (BCII) with over twenty-two years on *Page 4 
the job, tested the crack cocaine involved in count four, represented by state's exhibit nine. (Tr. 328). He testified that the bag of crack cocaine he received was wet and mushy. (Tr. 333, 341). When he removed the crack cocaine to weigh it, he allowed the water in the bag to fall to the bottom "as best" as he could. He estimated that there was approximately a tablespoon of what appeared to be water remaining in the bag. (Tr. 334). He then put the crack cocaine in a dish under a hood for evaporation purposes and let it dry for three hours. (Tr. 335).
 {¶ 11} After three hours, he weighed the substance and obtained a weight of 10.31 grams. (Tr. 335). He acknowledged that it was not completely dry when he weighed it. (Tr. 345). He explained that crack cocaine, like a marijuana plant, loses weight over time. In the case of crack cocaine, this is due to the solvent drying. Thus, he was not surprised that the crack weighed over 2.5 grams less five months later when tested by an independent expert. (Tr. 346). BCII agent Ross finally testified that the crack cocaine he weighed could have been smoked in that mushy state without drying it. (Tr. 347, 349).
 {¶ 12} An expert from Tri-State Laboratories independently tested the state's evidence on December 28, 2005. His weights for the crack cocaine in counts two and three were similar to the state's weights with some decrease due to the amounts used by the state in the testing process. (Tr. 319). For state's exhibit nine, however, he obtained a weight of only 7.783 grams, over 2.5 grams less than the state's reported weight. (Tr. 465). As appellant points out, this weight would have placed the degree of the offense into a lower category. Testimony established that the amount of the sample used in the testing would not account for this large drop in weight as BCII agent Ross estimated that his testing used only between .2 and .3 grams of the evidence. (Tr. 341).
 {¶ 13} The independent expert noted that water evaporates from crack even in an evidence bag. (Tr. 472-473). He pointed out that the crack will likely weigh even less in another five months. (Tr. 473). He explained that there can be a variance in reported weight depending on whether the assigned scientist dries out the crack cocaine or not. (Tr. 469). He revealed that he does not dry out samples before weighing them and that his policy is to weigh them as they are received. He then *Page 5 
advised that if he needed to obtain a stable weight, he would weigh the substance, place it in an oven at 105 degrees and then put it in a dessicator to cool. He would weigh it again, and if the weight changed, he would cook and cool again and again until the weight of the substance remained stable. (Tr. 472).
 {¶ 14} BCII agent Brooklyn Rierdon originally tested state's exhibit six, the sample of crack cocaine involved in count three. She initially found the sample to weigh 5.82 grams. (Tr. 314). Since it was wet and oily, she decided to allow it to dry overnight in the evidence vault. (Tr. 312-313). She explained that she did this to get the weight of the substance itself minus the liquid. (Tr. 314). The next day, she obtained a weight of 4.69 grams; this is the weight she reported. (Tr. 313). She stated that such drying is not required by law and is not a lab policy but is just her policy. (Tr. 320). Appellant notes that notwithstanding the original wet weight of more than five grams, the state charged him in count three with trafficking in an amount of crack cocaine more than one gram but less than five grams.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 15} Appellant's first assignment of error provides:
 {¶ 16} "DEFENDANT/APPELLANT'S CONVICTION IN COUNT IV VIOLATES THE EQUAL PROTECTION CLAUSE."
 {¶ 17} The Equal Protection Clause is found in theFourteenth Amendment to the United States Constitution and in Section 2, Article I
of the Ohio Constitution. This clause prevents states from treating similarly situated individuals differently under its laws on an arbitrary basis. State v. Williams (2000), 88 Ohio St.3d 513, 530. Where (as here) the defendant does not argue a fundamental right is violated or that he is in a suspect class, only the rational basis test must be met, which recognizes that classifications need not be perfect. SeeMcCrone v. Bank One Corp., 107 Ohio St.3d 272, 2005-Ohio-6505, ¶ 8
(rational method to advance valid state interest).
 {¶ 18} The state tries to dispose of the issue by declaring that it is people not drugs that are entitled to equal protection of the laws. However, this is not the effect of appellant's argument. Appellant generally claims that the law is applied arbitrarily to people where one BCII agent allegedly uses a wet weight and one uses a dry weight *Page 6 
and/or where one's degree of felony may be different depending upon which expert tests his substance. Thus, we move on.
 {¶ 19} It is important to note here that it is not the fairness of the face of a law that is being challenged. Rather, appellant appears to be challenging the application of the law concerning degrees of drug offenses. See R.C. 2925.03. "When a complaining party alleges that a lawthat is fair on its face was applied unequally to those who aresimilarly situated, that party must establish intentional and purposefuldiscrimination in order to prove a denial of equal protection." LindenMed. Pharmacy v. Ohio State Bd. of Pharm., 10th Dist. No. 02AP-1233,2003-Ohio-6650, ¶ 16 (arguments on lesser sanctions for other distributors). Even selective prosecution does not violate the Equal Protection Clause unless it is deliberately based upon an unjustifiable standard. Cleveland v. Trzebuckowski (1999), 85 Ohio St.3d 524, 530-531
(defendant must show he was invidiously singled out for prosecution). The good faith of government officials and the validity of their application of a law are presumed; thus, the burden of demonstrating intentional and purposeful discrimination is upon the defendant. SeeSnowden v. Hughes (1944), 321 U.S. 1, 8; Sunday Lake Iron Co. v.Wakefield Twp. (1917), 247 U.S. 350, 353.
 {¶ 20} First, we note that appellant does not indicate where or if he raised this constitutional argument to the trial court. Where adefendant fails to raise a constitutional argument to the trial court,the appellate court need not review the issue. State v. Awan (1986),22 Ohio St.3d 120, 123. We may, however, review the matter if we so choose to exercise our discretion. In re M.D. (1988), 38 Ohio St.3d 148, 151. See, also, Crim.R. 52(B) (if substantial rights affected, court may decide to hear).
 {¶ 21} Even if we decided to review this issue, there is no requirement that the state allow the crack to completely dry or stabilize in weight before assigning an official weight to it. That is to say, the state is not responsible for fine-tuning the cooking process for a crack dealer. Moist crack cocaine is considered a freshly made substance. (Tr. 315, 373-374). See, also, State v. Ballard (Aug. 5, 1991), 2d Dist. No. 11764. Merely because a dealer is rushed to sell it fresh and right out of the pot does not require the state to exercise elaborate drying procedures or to institute long-term evaporation periods. See, generally, State v. Freeman (2000), 138 Ohio App.3d 408, *Page 7 
416 (not reaching the issue but noting that inconsistent quality of processing by dealers affects the water content of the final product and pointing out that weights decreased from 117.65 grams to 107.17 grams and from 46.48 grams to 34.63 grams in four to five months).
 {¶ 22} This conclusion is supported by the statutes defining the offense and the substance. The trafficking offense herein entails selling or offering to sell a drug that is cocaine or a compound,mixture, preparation or substance containing cocaine and is a second degree felony if the amount equals or exceeds ten grams but is less than twenty-five grams of crack cocaine. R.C. 2925.03(C)(4). Thus, crack cocaine is still considered cocaine. R.C. 2925.01 (X)(1). However, where it is in crack form, the allowable weight for each degree of felony decreases.
 {¶ 23} Crack cocaine is statutorily defined as a compound, mixture,preparation, or substance that is or contains any amount of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use. R.C. 2925.01(GG). This demonstrates that the entire compound, mixture, preparation or substance is considered crack (and thus can be weighed) if it contains any amount of the base form of cocaine.
 {¶ 24} From this, we can conclude that allowing every drop of water to evaporate out of wet crack is unnecessary. In fact, BCII agent Ross disclosed that a user could have smoked the damp crack in the same condition in which he received it. (Tr. 347, 349). He even explained the technique for smoking "mushy" crack, making reference to a glass tube and a "Chore Boy." (Tr. 347).
 {¶ 25} The Eighth District has agreed with the conclusion that crack can be weighed as received and has upheld convictions of higher degrees in cases where later testing of crack cocaine showed a lower weight. SeeState v. Burrell, 8th Dist. No. 86702, 2006-Ohio-2593, ¶ 3; State v.Alexander, 8th Dist. No. 85688, 2005-Ohio-5200, ¶ 29-30, 44-45, 53-54 (water is generally present as it is a necessary component in the process of transforming cocaine into crack cocaine). Other courts have come to this conclusion regarding marijuana as well. State v. Kuntz
(Oct. 2, 2001), 4th Dist. No. 01CA2604; State v. Hunter (Aug. 19, 1999), 5th Dist. No. 99CA36. *Page 8 
 {¶ 26} Additionally, appellant mischaracterizes the wet and dry weight labels. Contrary to his contentions, both BCII experts attempted to dry the drugs in some manner. BCII agent Ross testified that he left all loose water in the bag and removed only the non-liquid crack cocaine for weighing. He then spread the crack in a dish and placed it under a hood for purposes of evaporation for three hours. There is absolutely no indication that this would result in a wetter crack than allowing it to dry in an unknown container in a vault overnight. The fact that the sample allowed to dry overnight did not change five months later does not automatically require one to attribute the shrinkage of exhibit nine to the differences in expert's procedures for drying.
 {¶ 27} For instance, this change in exhibit nine's weight could also be explained by the fact that it was a wetter sample to begin with. SeeFreeman, 138 Ohio App.3d at 416 (noting that inconsistent quality of processing by dealers affects the water content of the final product). In fact, testimony and evidence established that the drugs constituting count four were not just wet, but they were sitting in a bag of water. This is a distinguishable initial presentation from the drugs in count three.
 {¶ 28} Moreover, the state charged appellant with the offense applicable to the weight reported in the final report by the expert. The prosecutor did not pick and choose among weights to the detriment of appellant. The pre-drying weight was not even reported by the expert in her report to the prosecutor. The post-indictment weight was the result of natural evaporation and was unknown and irrelevant to the state's charging decision. No deliberate acts of discrimination against appellant by the prosecutor or its agents have been established.
 {¶ 29} Admittedly, consistent lab procedures are preferable. However, the matter is best left for the legislative branch. Although the crack cocaine in count four may not have been as dry as it will be in the future, as analyzed above, the lab need not allow the crack to dry at all. See Burrell, 8th Dist. No. 86702; Alexander, 8th Dist. No. 85688;Kuntz, 4th Dist. No. 01CA2604; Hunter, 5th Dist. No. 99CA36. In fact, the Supreme Court has held that in weighing marijuana, the state need not separate illegal, narcotic portions of substance from non-narcotic, legal portions. State v. Wolpe (1984), 11 Ohio St.3d 50, 52. The experts' attempts to dry the crack only operated to *Page 9 
the state's detriment. See State v. Plummer (1986), 22 Ohio St.3d 292,295, fn.2 (although DU I rules required refrigeration of urine sample, defendant was not prejudiced since lack of refrigeration decreases alcohol content). That is, since reporting of the immediate weight as packaged for sale is permissible and since the inconsistent procedures just ended up helping appellant avoid the elevated felony which he should have been charged with in count three, prejudice is not apparent.
 {¶ 30} For all of the foregoing reasons, including the aforementioned fact that appellant waived his equal protection argument issue at the trial level, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 31} Appellant's second assignment of error provides:
 {¶ 32} "DEFENDANT/APPELLANT'S CONVICTION IN COUNT IV IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 33} Using the same information set forth in the prior assignment of error, appellant contends that the state presented insufficient evidence that state's exhibit nine weighed more than ten grams. Alternatively, he alleges that the jury clearly lost its way in determining the conflicts in the evidence regarding the weight of the sample, urging that the state's other expert established that dry weight is the standard.
 {¶ 34} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 35} The state's expert testified that the crack cocaine weighed 10.31 grams when he tested it. This is sufficient evidence that appellant sold an amount equal to or exceeding ten grams. The fact that the independent expert later testified that the *Page 10 
sample weighed 7.783 five months later does not change the sufficiency of the evidence. The jury was advised that water evaporates from crack cocaine over time. There is no evidence that the sample weighed under ten grams at the time of the sale.
 {¶ 36} We further refer back to our analysis above. Most specifically, we reiterate our statement that the definition of crack includes the compound, mixture or preparation containing the crack cocaine. R.C.2925.01(GG). Viewing the evidence in the light most favorable to the state, some rational fact-finder can find that the crack cocaine that appellant sold weighed ten grams or more. See Alexander, 8th Dist. No. 85688 at ¶ 44-45 (expert explained that crack loses weight over time due to evaporation and sufficient evidence that crack weighed over the limit at the time of initial reporting).
 {¶ 37} In reviewing the weight of the evidence, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.Thompkins, 78 Ohio St.3d at 387. Weight of the evidence is not a question of mathematics; rather, it depends on the evidence's effect in inducing belief. Id. We thus inquire whether the evidence produced at trial attained the high degree of probative force and certainty required of a criminal conviction. State v. Tibetts (2001), 92 Ohio St.3d 146,163, citing State v. Getsy (1998), 84 Ohio St.3d 180, 193.
 {¶ 38} In conducting our review, we are mindful that the fact-finder occupied the best position to assess the weight of the evidence and credibility of the witnesses whose gestures, voice inflections, and demeanor are personally observed. State v. Hill (1996),75 Ohio St.3d 195, 205; State v. DeHass (1967), 10 Ohio St.2d 230, 231. See, also,Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Where there are two fairly reasonable views or explanations, we generally do not choose which one we prefer. State v. Black, 7th Dist. No. 03JE1,2004-Ohio-1537, ¶ 18. Rather, we defer to the trier of fact unless the evidence weighs so heavily against conviction that we are compelled to intervene. Id.
 {¶ 39} Such intervention should occur only in an exceptional case.Tibetts, 92 Ohio St.3d at 163, citing Thompkins, 78 Ohio St.3d at 387. As such, a unanimous *Page 11 
panel of appellate judges is required to reverse a jury verdict on grounds of manifest weight of the evidence. Thompkins,78 Ohio St.3d at 389.
 {¶ 40} Here, the jury heard BCII agent Ross present the evidence he gathered regarding state's exhibit nine. Specifically, he stated that after removing all loose water and letting the sample dry under a hood for a few hours, it weighed 10.31 grams. (Tr. 333-334, 341). They heard the expert called by appellant testify that he never dries drugs but weighs them in the condition he receives them. (Tr. 469). The jury was educated that crack cocaine is made with water and that some additional liquid is generated in the process. (Tr. 314, 374). They learned that water evaporates from crack over time. (Tr. 346, 472-473). As aforementioned, the state need not put the finishing touches on a dealer's crack supply before it conducts its weighing.
 {¶ 41} After reviewing all of the evidence, we conclude that the jury did not clearly lose its way and create a manifest miscarriage of justice. See Alexander, 8th Dist. No. 85688 at ¶ 53-54 (rejecting argument that state must separate all moisture from crack cocaine and upholding the weight of the evidence). See, also, Burrell, 8th Dist. No. 86702 at ¶ 3 (considering evaporation and amount used in testing, it was not unreasonable to find weight of crack exceeded five grams even when it weighed under five grams on the day of trial). As such, this assignment of error is overruled. ASSIGNMENT OF ERROR NUMBER THREE
 {¶ 42} Appellant's third assignment of error provides:
 {¶ 43} "DEFENDANT/APPELLANT'S CONVICTION IN COUNT THREE OF THE INDICTMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 44} Count three involved trafficking in crack cocaine in an amount equal to or exceeding one gram but less than five grams. It was elevated from a fourth degree felony to a third degree felony due to the allegation that the offense was committed in the vicinity of a school. R.C. 2925.03(C)(4)(c). The jury found him guilty of the offense and made a separate additional finding regarding the proximity to the school. Appellant concedes that there was sufficient evidence that counts one and two (the May 18, 2005 offenses) occurred in the Idlewood residence across the street from the school and that the house was within 1000 feet of the school. *Page 12 
 {¶ 45} However, with regard to the May 27, 2005 offense, he notes that testimony established that the CI left the residence in a vehicle with appellant and that the transaction occurred while driving around the immediate neighborhood. Appellant thus contends that there was no evidence presented that the offense occurred within 1000 feet of the school and that the jury clearly lost its way in making this additional finding regarding count three. The law on sufficiency and weight was set forth above. Therefore, we focus here on the facts relevant to count three.
 {¶ 46} A county engineer testified that the Idlewood property was fifty feet from the school's property. (Tr. 194). He also testified that the map he introduced used a scale of one hundred feet for every inch. (Tr. 200).
 {¶ 47} The CI testified that when she arrived at the house on Idlewood, she was advised that appellant was not home. She called appellant, and he picked her up in front of the house to avoid selling in front of his niece and nephew. She testified that they exchanged the drugs and money and then rode around for five to seven minutes. (Tr. 238-239). She was not sure how far they drove or what roads they traveled. (Tr. 239). She was also unsure how many blocks were traversed before any type of transaction took place. (Tr. 255). On cross-examination, she testified that the transaction did not take place in front of the house at 3303 Idlewood. (Tr. 255-256). On redirect, she estimated they drove a couple blocks or so. (Tr. 270).
 {¶ 48} The officer monitoring the CI testified that the car ride with appellant was three to four minutes, just enough time to circle the block. (Tr. 370). The officer testified that the car drove in an approximate square around several blocks. His confusing rendition of the streets traversed combined with the scale of the map allows one to infer that the car traveled outside of a 1000 foot radius of the school at certain points. (Tr. 378-380).
 {¶ 49} However, the videotape (from a camera hidden on the CI) shows the CI entering the vehicle in front of the Idlewood property and asking for her drugs before the car starts moving. It was urged that appellant can be seen reaching for the baggie from his visor and handing it back to the CI. (Tr. 454). Appellant's niece and nephew can still be seen in the background when this occurred. Photographs also show appellant's niece near the car when the CI was counting out her money in the *Page 13 
backseat. From a review of the evidence, one can determine that the drugs were provided to the CI prior to leaving the vicinity of the school.
 {¶ 50} Viewing all of the evidence in the light most favorable to the state, a rational person could find that appellant committed the offense of selling crack cocaine within one thousand feet of a school. SeeSmith, 80 Ohio St.3d at 113. Thus, sufficient evidence supported appellant's conviction of count number three.
 {¶ 51} Merely because the CI could not remember exactly where the car was when the exchange occurred does not invalidate the conclusions that can be independently drawn from the videotape and other evidence. The jury could view and weigh this evidence in any reasonable manner. They did not clearly lose their way and create a manifest miscarriage of justice by believing that the offense occurred within 1000 feet of the school. See Thompkins, 78 Ohio St.3d at 387. Hence, the jury verdict is not contrary to the manifest weight of the evidence.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 52} Appellant's fourth assignment of error alleges:
 {¶ 53} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT PERMITTED TESTIMONY REGARDING OTHER CRIMES, WRONGS OR ACTS OF DEFENDANT/APPELLANT."
 {¶ 54} Appellant argues that the evidence that he sold drugs to the CI in the past was inadmissible for two reasons. First, he states that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury. Then, he contends that the evidence was improper other acts evidence. We shall begin by setting forth the disputed evidence.
 {¶ 55} When the state asked the CI the dates of the undercover buys, she mistakenly responded that the first one was May 17, 2005. It was actually on May 18, 2005. In following up on questions concerning the CI's memory, the state asked if the CI had ever purchased drugs from appellant before May 18, 2005. She responded affirmatively without objection. (Tr. 225). She further stated that she has purchased both crack cocaine and pills of Vicodin from him in the past. (Tr. 226, 232). Still, no objections were entered. She went on to explain how she would order the drugs. (Tr. 233). Again, no objection was lodged. Similarly, a police officer testified that the CI *Page 14 
offered her assistance in gathering evidence against appellant from whom she had purchased crack cocaine in the past. (Tr. 403-404). The defense entered no objection here either.
 {¶ 56} In closing arguments, the state noted that appellant had dealt with the CI before. (Tr. 509). Appellant also takes issue with this portion of the closing. However, this latter statement was made by the state while reviewing the evidence for the May 27, 2005 transaction. Since the May 18, 2005 transaction had already occurred, the state's assertion need not be construed as a relation of prejudicial or other acts testimony.
 {¶ 57} As for the other allegations here, we proceed to set forth the pertinent law. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury. Evid.R. 403(A). The admission or exclusion of relevant evidence based upon Evid.R. 403(A) is within the sound discretion of the trial court.State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107. Logically, most of the state's evidence prejudices the defendant; it is only that which unfairly prejudices him that the rule prevents. Id.
 {¶ 58} As for other acts evidence, the text of the following two laws must be reviewed:
 {¶ 59} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
 {¶ 60} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof *Page 15 
may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.
 {¶ 61} It has thus been concluded that other acts evidence is admissible if it "tends to show" by substantial proof any of those things enumerated. State v. Crotts, 104 Ohio St.3d 432, 2004-Ohio-435, ¶ 19;State v. Broom (1988), 40 Ohio St.3d 277, 282. As with other evidentiary matters, the trial court's decision admitting other acts evidence is not reversed absent an abuse of discretion. State v.McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 82.
 {¶ 62} In the case at bar, appellant failed to object to any of the aforementioned statements. Thus, he waived any error on appeal.Skatzes, 104 Ohio St.3d 195 at ¶ 108 (waiver of other acts evidence). The appellate court may, but need not, recognize plain error if substantial rights are affected, even if the error was not brought to the attention of the court. Crim.R. 52(B). However, before an appellate court can recognize plain error, the court must find obvious error affecting such substantial rights that the error was outcome determinative. State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62. Plain error is a discretionary doctrine to be used with the utmost of care by the appellate court only in exceptional circumstance to avoid a manifest miscarriage of justice. State v. Hughbanks, 99 Ohio St.3d 365,2003-Ohio-4121, at ¶ 39. Such circumstances do not exist here.
 {¶ 63} For instance, the CI's claim that she previously bought drugs from appellant, is not unfairly prejudicial, confusing or misleading. Notably, the present case involved not one mere sale but three buys that were all recorded and watched from afar by police. Such fact diminishes the effect of the disclosure of the existence of a couple more sales. Moreover, the telephone calls and taped visits establish that a prior relationship existed between the CI and appellant as buyer and seller. As a result, other acts evidence was already implied in a non-contested and acceptable manner. Additionally, there was a plethora of evidence that incriminated appellant. Any error in admitting this other acts evidence would thus be harmless. See McKnight, 107 Ohio St.3d 101
at ¶ 88 (other acts evidence harmless where impact of such testimony was minimal and not prejudicial given other compelling evidence of appellant's guilt). *Page 16 
 {¶ 64} Furthermore, we have previously pointed out that testimony on past deals tends to show intent (as opposed to any defense that the defendant was merely present). State v. Simmons, 7th Dist. No. 06JE4,2007-Ohio-1570, ¶ 125, citing State v. Cruz (Oct. 28, 1993), 8th Dist. No. 64007. Mention of prior transactions also tends to show identity as repeated contact with defendant in past sales bolsters the informant's identification of defendant and discounts any suggestion of misidentification. Simmons, 7th Dist. No. 06JE4 at ¶ 126, citingState v. McNeill (Apr. 1, 1997), 9th Dist. No. 95CA006158; Statev.Greene (May 15, 1996), 4th Dist. No. 94CA2297; Cruz, 8th Dist. No. 64007; State v. Velez (Dec. 18, 1992), 3d Dist. No. 4-92-11; UnitedStates v. Evans (C.A.5, 1988), 848 F.2d 1352, 1360. Additionally, interaction in the near past in similar and identical situations may tend to show a scheme, plan or system. Simmons, 7th Dist. No. 06JE4 at ¶ 126. Some courts even consider brief statements that the defendant is one's regular dealer to be background information providing context for the current offense. See id., citing State v. Freshwater, 11th Dist. No. 2002-L-041, 2004-Ohio-384, ¶ 43-46. The state adds that such evidence is permissible where it is offered to show how the CI knew the defendant or the mode of operation in planning buys over the telephone. See State v.Lumbus, 8th Dist. No. 87767, 2007-Ohio-74, ¶ 14. For all of the foregoing reasons, we shall not exercise our discretion to recognize plain error.
 {¶ 65} Appellant also alleges under this assignment of error that the court improperly allowed the state to elicit evidence that implied appellant had a violent character. The state argues that the other acts prohibited are past acts not future fear of retaliation. However, the state misreads appellant's argument. That is, appellant is proceeding here under Evid.R. 404(A), not 404(B). This division contains a general character rule, not a rule regarding prior acts.
 {¶ 66} In general, evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Evid.R. 404(A). As aforementioned, the trial court's admission of such evidence is subject to review for an abuse of discretion. State v. Finnerty (1989),45 Ohio St.3d 104, 109. An abuse of discretion connotes that the trial court's attitude *Page 17 
was unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157. We turn to the disputed statements.
 {¶ 67} As the CI was testifying, the state asked if it was her first time testifying and if she was nervous. (Tr. 234). The following statements were then made:
 {¶ 68} "Q. Are you afraid of what might happen to you when this is over?
 {¶ 69} "A. Yeah.
 {¶ 70} "Q. Like what happens to people who testify about drug dealers.
 {¶ 71} "[Defense counsel]: Objection.
 {¶ 72} "THE COURT: Sustained. Don't answer.
 {¶ 73} "Q. All right. So you stated you're nervous. Do you fear retaliation?
 {¶ 74} "A. Uh-huh.
 {¶ 75} "[Defense counsel]: Objection.
 {¶ 76} "THE COURT: She can answer yes or no." (Tr. 235).
 {¶ 77} Later, during an officer's testimony, the state asked if it is dangerous for informants to work with the police. The court overruled defense counsel's objection. The officer answered that it was extremely dangerous because drugs usually go hand in hand with guns. When he started to mention his work on executing prior search warrants, the court sustained an objection. (Tr. 355). Subsequently, the officer was asked why he listens to the transaction over the wire placed on the CI. He responded with various answers including his concern for safety and the need to intervene if someone pulls a gun. (Tr. 372).
 {¶ 78} The latter statement of the officer is not improper character or propensity evidence. It merely lists reasons for why an informant is wired with a live feed. As to his statement that guns and drugs are related, the Supreme Court has recognized that a dealer is likely to be armed and "[t]he nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous." State v. Evans (1993), 67 Ohio St.3d 405, 413. However, theEvans case dealt with reasonable suspicion to frisk rather than testimony presented to a jury.
 {¶ 79} Still, it appears that the statements on fear of retaliation and the revelation that the informant's job was dangerous did not violate the ban on character set forth in Evid.R. 404(A). The rule specifies that evidence of a character trait is not *Page 18 
admissible to show the defendant acted in conformity with thattrait on a certain occasion. Here, appellant was on trial for trafficking in drugs. He was not being tried for guns. Additionally, no one specifically stated that he carried a gun. Finally, even if portions of the disputed statements should not have been admitted under some other general rule, there is overwhelming evidence of appellant's guilt and any such non-constitutional error is thus harmless. SeeMcKnight, 107 Ohio St.3d 101 at ¶ 286. Accordingly, this assignment of error is overruled.
 {¶ 80} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1